## ELWELL *v.* FOSDICK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 216. Argued March 19, 20, 1890. — Decided March 31, 1890.

The holder of $14,000 out of $955,000 of railroad bonds secured by a mortgage was permitted by the Circuit Court to appeal to this court, in the name of the trustee in the mortgage, from a decree which it was claimed affected the interest of such holder. It appearing that some time before the appeal was taken the trustee had executed a release of his right to appeal, and of errors in the decree, and that the court had, in the decree, found that there was no proof showing that the trustee had not acted in good faith: *Held*, that the release bound all the bondholders represented by the trustee; that it was properly brought before this court, though not found in the transcript of the record; that the appeal was the appeal of the trustee; and that, on the motion of the appellee, it must be dismissed.

THIS case grows out of proceedings which took place in the Circuit Court of the United States for the Northern District of Illinois, in the suit of William R. Fosdick and James D. Fish, mortgagees in trust, against The Chicago, Danville and Vincennes Railroad Company and others, wherein this court, in *Chicago & Vincennes Railroad* v. *Fosdick*, and *The Same* v. *Huidekoper*, 106 U. S. 47, on the appeal of the railroad company, had under review decrees made by the Circuit Court in the cause.

The suit was brought March 27, 1875, to foreclose a mortgage executed by the company, on March 10, 1869, to Fosdick and Fish as trustees, to secure $2,500,000 of bonds. The defendants in the bill were the railroad company and James W. Elwell, one of the two trustees, (the other being the said James D. Fish,) in a second mortgage executed by the company December 16, 1872, to secure $1,000,000 of convertible bonds. Elwell, as such trustee, filed a cross-bill, May 17, 1875, setting up a default in the payment of interest on the bonds secured by the second mortgage, and praying for a foreclosure of it. A receiver was appointed, May 20, 1875, and an

amended bill was filed by Fosdick and Fish, September 14, 1875. Answers were filed by the company and by Elwell to the amended bill, and answers to the cross-bill of Elwell by the company and by Fosdick and Fish. The cause was referred to a master, whose report, made June 24, 1876, sustained the allegations of the original bill, and fixed the amount due under the mortgage to Fosdick and Fish and also that due under the mortgage to Elwell. A decree of foreclosure and sale was entered on the 5th of December, 1876. The property was sold under that decree by a master, February 7, 1877, and was purchased by Huidekoper and others, a committee of the first-mortgage bondholders, the purchase price being $1,450,000. The purchasers paid in cash $362,500, being one-fourth of their bid, and petitioned the court, on February 17, 1877, to be allowed to discharge the remainder of their bid by surrendering $2,315,000 of the first-mortgage bonds held by them, and to be let into possession of the property. On the 23d of February, 1877, Elwell answered this petition, denying the right of the purchasers to a deed, on the ground that, as the statute of Illinois provided for a redemption at any time within fifteen months after the sale, he ought to be allowed that time in which to redeem from the sale. The master made to the court a report of the sale, the court confirmed the report on the 12th of April, 1877, and, on the 16th of April, 1877, the master reported that he had executed a deed to the purchasers. They conveyed the property, on the 28th of August, 1877, to The Chicago and Nashville Railroad Company, a corporation which had been organized on the 7th of February, 1877, and which, on the 28th of August, 1877, was consolidated with an Indiana corporation, by the name of The Chicago and Eastern Illinois Railroad Company.

The decree of foreclosure, made December 5, 1876, was reversed by this court, by its decision in 106 U. S., and the mandate thereon, dated May 17, 1882, was filed in the Circuit Court on the 25th of May, 1882. The grounds of the reversal were, that it was not shown that default in the payment of interest on the bonds had been continued for six months prior to the filing of the bill, nor that the trustee received a written

request from the holders of a majority of the bonds to commence proceedings for foreclosure, as provided by the terms of the first mortgage.

After the cause returned to the Circuit Court, and on the 7th of July, 1882, Fosdick and Fish filed an amended and supplemental bill, setting forth (1) that there had been default, continued more than six months after presentation and demand, in the payment of interest coupons on the first-mortgage bonds; and (2) that a majority of the bondholders, being the holders of more than 92 per cent of all the outstanding bonds, had in writing demanded that the trustees immediately declare the principal of the bonds due and payable, and obtain a final decree to appropriate the net proceeds of the sale of the property, as such sale was confirmed, to the payment of the first-mortgage bonds and interest thereon. But immediate foreclosure for the full amount of principal and interest was prayed for. The Chicago, Danville and Vincennes Railroad Company demurred to the amended and supplemental bill, and petitioned the court to appoint a receiver to take possession of the property out of the hands of The Chicago and Eastern Illinois Railroad Company.

The Chicago and Eastern Illinois Railroad Company was made a party defendant to the suit. It answered the amended and supplemental bill, and on the 6th of December, 1882, filed its cross-bill against The Chicago, Danville and Vincennes Railroad Company, Fosdick and Fish, trustees, and Elwell, trustee. The material allegations of this cross-bill were as follows: The purchasers at the master's sale were *bona fide* purchasers at an open sale, which was attended with much competition, and the property brought a full and fair price. The sale was reported by the master and was confirmed by the court, and neither The Chicago, Danville and Vincennes Railroad Company nor Elwell had ever filed exceptions to the report or appealed from the decree of confirmation. Nearly all of the $362,500 paid by the purchasers at the master's sale had been paid out to creditors of The Chicago, Danville and Vincennes Railroad Company, under decrees of the court. A large part of that amount was contributed by the holders of Indiana Division

bonds, who were strangers to the record and innocent purchasers for value. On September 1, 1877, The Chicago and Eastern Illinois Railroad Company issued, negotiated and put in general circulation $3,000,000 of 6 per cent bonds, secured by a trust deed on the property so purchased at the sale; and on December 1, 1877, issued $1,000,000 of income bonds. The Chicago and Eastern Illinois Railroad Company had also issued $3,000,000 of capital stock; and by consolidation with the Danville and Grape Creek Railroad Company had incurred an additional bonded debt of $750,000. By means of certain perpetual leases The Chicago and Eastern Illinois Railroad Company had acquired additional railroad, and had also built certain branches, and procured additional rolling stock. The appeal from the foreclosure decree of December 5, 1876, was not prayed until October 30, 1878, and was not perfected until January 29, 1879. During the five years which intervened between the purchase of the property by Huidekoper and others, on the 7th of February, 1877, and March 6, 1882, when the decree of foreclosure of December 5, 1876, was reversed by this court, the $4,000,000 of bonds and $3,000,000 of capital stock issued by The Chicago and Eastern Illinois Railroad Company, on the faith of its title to the property, had been largely dealt in on the stock exchanges of Boston and New York, and had so far changed ownership that, on March 6, 1882, when the decree of foreclosure was reversed, nearly all the bonds and a majority of the stock were owned by strangers to the litigation, who had purchased in good faith for full value.

The prayer of the cross-bill was that the title of The Chicago and Eastern Illinois Railroad Company, and of its stockholders and bondholders, to the property be forever quieted, as against The Chicago, Danville and Vincennes Railroad Company, Fosdick and Fish, and Elwell; and that it be decreed that The Chicago and Eastern Illinois Railroad Company had acquired a good title in fee simple absolute as against each of the defendants.

Answers were filed to the cross-bill by each of the defendants, and replications to such answers; and, on a reference, a

master took a large amount of testimony on the issues joined, and filed the same, with his report, on the 9th of June, 1884.

On the 24th of June, 1884, The National City Bank of Ottawa, Illinois, a corporation, filed a petition as the owner and holder of $14,000 of the convertible mortgage bonds of The Chicago, Danville and Vincennes Railroad Company, secured by the mortgage to Fish and Elwell, praying to be made a party defendant to the suit, and to be allowed to file an answer in the suit, on the ground that Elwell was not properly protecting the rights of the bank in the premises.

The case was heard on all the pleadings and proofs, before Judge Blodgett, and on the 30th of June, 1884, a decree was entered finding the equities of the cause in favor of the original plaintiffs as against all the defendants except the Chicago and Eastern Illinois Railroad Company, and also finding the equities of the cause in favor of the latter company by reason of the matters set forth in its cross-bill, as against all of the defendants thereto. The decree also contained the following provisions: "By virtue of the original deed of Henry W. Bishop, master in chancery, dated April 16, 1877, to Huidekoper, Shannon and Dennison, and the confirmation thereof by this court, and by the subsequent conveyance by said Huidekoper, Shannon and Dennison to the Chicago and Nashville Railroad Company, on August 28, 1877, and the subsequent consolidation between the Chicago and Nashville Railroad Company and the State Line and Covington Railroad Company, on August 28, 1877, as set forth in its cross-bill, the Chicago and Eastern Illinois Railroad Company acquired a perfect and indefeasible title to all and singular the Illinois Division of said Chicago, Danville and Vincennes Railroad, as hereinbefore specifically described, and also as described in said master's deed of April 16, 1877, reference being thereto had, free and clear of all lien, claim, title or equity of any kind whatever of said William R. Fosdick, James D. Fish, James W. Elwell, R. Biddle Roberts, and the Chicago, Danville and Vincennes Railroad Company, or either of them, or any of the bondholders, stockholders or creditors of said Chicago, Danville and Vincennes Railroad Company, or any persons claiming by or

under it or any of said trustees. . . . And it is further ordered that the petition of the National City Bank of Ottawa, Illinois, filed herein on the 24th day of June, 1884, for leave to intervene herein as holders of certain second-mortgage bonds of said Chicago, Danville and Vincennes Railroad Company, be dismissed at the cost of said petitioner; it appearing to the court that the trustees under said second mortgage are parties to this suit and have appeared and answered herein, and that there is no pr of showing that said trustees are not acting in good faith."

On the 11th of October, 1884, The National City Bank of Ottawa prayed the Circuit Court for leave to prosecute an appeal in its own name to this court from the decree of June 30, 1884, the grounds of its prayer being the facts set forth in its intervening petition of June 24, 1884, and also the fact that such decree was entered by consent of all the parties to the record, including Elwell, notwithstanding the effect of the decree was to leave the bank wholly without remedy on its bonds, while other holders of like bonds were provided for by a secret agreement, with the knowledge and consent of Elwell, and against the protest of the bank, and that Elwell had refused to appeal from such decree.

On the 3d of August, 1885, the court made an order authorizing the bank to appeal from the decree of June 30, 1884, in the name of James W. Elwell, trustee, on executing to him an indemnity against all costs and expenses which might be incurred. The appeal thus allowed was not perfected, but on the 28th of June, 1886, the court entered an order which recited the fact that the bank had requested Elwell, as trustee, to perfect an appeal to this court from the decree of June 30, 1884, and that he had refused to comply with such request; and ordering that the bank have leave to appeal from that decree to this court, in the name of Elwell, as trustee, on condition that it should give a bond to indemnify Elwell, and on the further condition that the bank, or some one in its behalf, should give the usual appeal bond, in the sum of $1000, both of said bonds to be filed on or before June 30, 1886. Those bonds were duly filed, and the transcript of the record was

filed in this court on October 18, 1886, and an addition thereto, by stipulation between the parties, on January 14, 1890. The appeal bond runs to Fosdick and Fish, trustees, "for the use and benefit of themselves and for the use and benefit of each and all parties affected or to be affected by the appeal in the condition hereunder written to this obligation." The bond recites that the appeal is from the decree of June 30, 1884, made on the original and supplemental bills of Fosdick and Fish, the cross-bill of Elwell, the cross-bill of The Chicago and Eastern Illinois Railroad Company, and another cross-bill.

The Chicago and Eastern Illinois Railroad Company now moves to dismiss the appeal of Elwell, trustee, by The National. City Bank of Ottawa, on the ground, among others, that Elwell, trustee, on the 16th of October, 1884, before the appeal was allowed, executed and delivered to the Chicago and Eastern Illinois Railroad Company, a written release of all errors had or committed in and concerning such decree, and especially releasing and waiving his right as such trustee to appeal from the decree; which release, on the 15th of November, 1884, was filed in the office of the clerk of the Circuit Court. A duly certified copy of such release is presented to this court as part of the moving papers. Its execution and authenticity are not denied on the part of the bank. It is entitled in the bill filed by Fosdick and Fish, and in the cross-bill brought by The Chicago and Eastern Illinois Railroad Company. It contains this statement:

"Comes now James W. Elwell, trustee, etc., one of the defendants in the above entitled cause and cross-cause, and says that of the one million convertible mortgage bonds referred to in said original bill, secured by trust deed, of which he is sole trustee, as therein charged, forty-five of said bonds, of one thousand dollars each, have not been issued by the company, and are now deposited with the clerk of said court. Fifty-eight of said bonds, representing fifty-eight thousand dollars, were issued in exchange for coupons, under the funding contract or scheme referred to in said original bill and decree. That all of said coupons have been paid out of the proceeds of sale of said railroad and property, as provided by

said decree. And that the holders of six hundred and seventeen of the balance of said bonds, amounting to six hundred and seventeen thousand dollars, do not desire further litigation in said cause and cross-cause; and that the holders of the balance of said bonds have hitherto declined to contribute to the cost of this litigation, or to protect him, as such trustee, against loss or the payment of costs or counsel fees. Now, therefore, the said James W. Elwell, trustee, as in said trust deed provided, representing the bondholders in said deed mentioned, for himself as such trustee, releases all errors whatsoever had or committed in or concerning the decree entered in the aforesaid cause and cross-cause by said court on the thirtieth (30th) day of June, A.D. 1884, and in and about the proceedings in said cause leading to said decree, and especially releases all his right, as such trustee, of appeal from said decree and proceedings, without intending, however, to prejudice the right of the holders of any of said convertible mortgage bonds to enforce the payment of their said bonds, or any part thereof."

*Mr. W. H. Lyford* for the Chicago and Eastern Illinois Railroad Company, one of the appellees, in support of the motion to dismiss.

*Mr. Charles M. Osborn* and *Mr. Samuel A. Lynde*, for the appellant, opposing.

The decree from which this appeal is prosecuted was not a joint decree within the meaning of the rule requiring all of the parties against whom a joint decree shall be rendered to join in the appeal.

The general rule, that all of the parties against whom a joint decree or judgment is rendered must join in the appeal or writ of error, is clearly stated in the decisions of this court, which are cited by counsel in the argument upon this point. The reasons upon which this rule is founded are first fully stated in *Owings* v. *Kincannon*, 7 Pet. 399, 402. The court there says: "Upon principle, it would seem reasonable that

the whole cause ought to be brought before the court, *and that all the parties who are united in interest ought to unite in the appeal.*" Since that decision, it is said in *Simpson* v. *Greeley,* 20 Wall. 152, 157: "The question has frequently been presented to this court, and has uniformly been determined in the same way, where *it appeared that the interest was joint.* . . . Where the interest is joint and the interest of all is affected by the judgment, the rule is universal that all must join in the writ of error. . . ."

In all of the cases where this rule is stated and applied, it is clearly announced that the rule exists only where the decree or judgment is joint, and the rule is held to have no application when the interest of the parties is not joint, and they are not jointly affected by the decree. *Simpson* v. *Greeley,* 20 Wall. *ubi supra; Germain* v. *Mason,* 12 Wall. 259 ; *Forgay* v. *Conrad,* 6 How. 201 ; *Brewster* v. *Wakefield,* 22 How. 118, 128; *Milner* v. *Meek,* 95 U. S. 252; *Railroad* v. *Johnson,* 15 Wall. 8.

If the trustees under the first mortgage and the Danville company should have joined in the appeal from this decree, the order of the Circuit Court allowing this appeal amounts to a sufficient severance of the parties to authorize the prosecution of this appeal in the name of Elwell alone.

There is no strict technical proceeding, that must be followed to work a severance of parties against whom a joint decree is rendered, so as to authorize an appeal by one of the parties.

In *Masterson* v. *Herndon,* 10 Wall. 416, 418, the court says: "We do not attach importance to the technical mode of proceeding called summons and severance. We should have held this appeal good if it had appeared in any way by the record that Maverick had been notified in writing to appear, and that he had failed to appear, or, if appearing, had refused to join." The court further says that there should be a written notice and due service, or the record should show the appearance and refusal, and that the court on that ground granted an appeal to the party praying for it as to his own interest. See also *O'Dowd* v. *Russell,* 14 Wall. 402; *Sage* v. *Central Railroad Co.,* 93 U. S. 412.

By the execution of releases of error, waiving all right to appeal, the trustees in the first mortgage, the trustee in the chattel mortgage and the Danville company, had, at the time when the National City Bank was granted leave to prosecute this appeal in the name of its trustee, Elwell, estopped themselves from prosecuting an appeal or joining with the appellant in this appeal. These releases of error worked a severance of any joint interest or right to appeal, and the appeal was properly allowed in the name of Elwell alone.

We contend that the decree is not joint, and that Elwell had separate and distinct interests in the controversy, which were affected by the decree, and that he not only could appeal separately from the decree, but in order to have that portion of the decree reviewed which finds in favor of the trustees under the first mortgage, he had to appeal separately; that the order granting this appeal was made on notice to all parties, and with all parties present in court, so that a severance was effected, if that was necessary; and that the other parties have, by their releases of error and waiver of right to appeal, voluntarily made a severance.

Elwell had no power or authority as trustee in the second mortgage to release errors in the foreclosure proceedings and decree, and to waive the right to appeal from the decree. His attempt to release errors, and waive the right to appeal, was a gross breach of trust and clearly outside of the power and duties conferred upon him by the trust deed; and it cannot bar the right of the National City Bank as holder of bonds secured by the trust deed to him, to prosecute by leave of court this appeal in his name, or furnish good reason for dismissing this appeal.

The second ground, urged in support of this motion, that Elwell's release of errors and waiver of right to appeal bars the prosecution of this appeal, seems to us so utterly unreasonable and inequitable as to require but little argument.

We cannot denounce Elwell's conduct in this matter in strong enough terms, so gross was the breach of trust which he attempted to perpetrate.

It appeared as a matter of record in this cause at the time

when this alleged release of errors was filed and put on record, that this bondholder, now prosecuting this appeal, had sought to become a party to the cause before the decree because of its belief and fears of Elwell's bad faith; that it had served notice and request on Elwell to take an appeal, and had offered him all protection and indemnity against costs, expenses or damages; and had afterwards petitioned the court to be allowed to appeal on its own behalf because of Elwell's collusion and breach of trust. The proposition that Elwell could come into court and by releasing errors and making a formal waiver of the right to appeal, cut off the rights and equities of any of his *cestuis que trust*, who did not give their express consent to this action, is monstrous, and all the more so when the record shows that the bondholder, to defeat whose rights this attempted release is used, expressly charged the trustee with bad faith and breach of trust, and sought the privilege of becoming a party to the cause in order to protect itself against him and to assert its rights in its own name.

A trustee can neither waive the lien given him by the trust deed, nor the right to enforce that lien, and thereby deprive the *cestui que trust* of the benefit of the security and lien or estop and bar him from enforcing it. Nor can he by his assent, release or waiver estop his *cestui que trust* from prosecuting an appeal under the authority of the court in his name, any more than he can assent for his *cestui que trust* to a diversion of the trust estate or a waiver of the lien. He has no personal right or title, but acts purely in a representative capacity. If he acts in good faith and within the powers vested in him, whatever binds him in any legal proceedings which he may begin and carry on to enforce the trust, binds his *cestui que trust*, and whatever forecloses the trustee, in the absence of fraud, forecloses the bondholders. *Richter* v. *Jerome*, 123 U. S. 233, 246. But he cannot foreclose the bondholders by refusing to enforce the trust, or by waiving the right to appeal from the decree that may be rendered adverse to their interests. Nothing short of the express consent of all of the holders of bonds secured by his trust deed could warrant the trustee to attempt to release errors or waive the right to

appeal; and whatever action he may attempt in that regard is fruitless against any bondholder who does not consent.

We wish before concluding to make this further suggestion. Elwell's release closes with the statement: "Without intending, however, to prejudice the right of the holders of any of said convertible mortgage bonds to enforce the payment of their said bonds or any part thereof." It is evident, therefore, that the release itself, even if within his power to execute, is wholly nugatory so far as having any effect upon this appeal is concerned. The appellant here is holder of certain of these bonds who has been given leave by the court to prosecute this appeal and use Elwell's name for that purpose, and the release cannot be considered as including this case.

MR. JUSTICE BLATCHFORD, after stating the case as above, delivered the opinion of the court.

It is contended for the bank that Elwell had no authority, as trustee in the second mortgage, to release errors in the foreclosure proceedings or in the decree and to waive the right to appeal from the decree; that his attempt to do so was a breach of trust, and outside of the powers and duties conferred upon him by the trust deed; and that the release does not bar the right of the bank, as the holder of bonds secured by the trust deed to Elwell and Fish, to prosecute this appeal by the leave of the court, in the name of Elwell, nor furnish any reason for dismissing it. In the petition of intervention filed by the bank on the 24th of June, 1884, six days before the final decree was entered, it was alleged "that, neither before the rendition of the final decree in this cause in this court, nor after its reversal by the supreme court, has the said Elwell shown any diligence or attempted to make any arrangement to prevent a sacrifice of the interests of your petitioner and others similarly situated;" and "that, unless it shall be permitted to become a party to this suit and file its answer therein, it will lose its rights in the premises under some collusive compromise or colorable sale, or through the indifference or neglect of the said Elwell." The court denied the prayer of the

intervening petition of the bank, stating "that the trustees under said second mortgage are parties to this suit and have appeared and answered herein, and that there is no proof showing that said trustees are not acting in good faith."

It thus appears that the court passed upon the question of collusion on the part of Elwell, and held that the bank was bound by the acts of Elwell representing it as trustee. No action was taken by the bank to appeal for more than three months. By an order made August 3, 1885, it was allowed to appeal in the name of Elwell, trustee, but it failed to perfect any appeal under such allowance. Such appeal was re-allowed on the 28th of June, 1886, and was perfected on the 30th of June, 1886, being exactly two years after the entry of the final decree and the last day on which the appeal could be taken. Meantime, by an instrument executed in October, 1884, and filed in the Circuit Court in November, 1884, at a time when no appeal was pending from the decree, the release of errors was executed by Elwell, trustee.

We are of opinion that this release bound all the bondholders represented by Elwell. It appears by the release that only 955 of the convertible bonds were issued; that 58 were issued in exchange for coupons, all of which coupons had been paid out of the proceeds of the sale of the property; that, of the remaining 897, the holders of 617 did not desire further litigation; and that the holders of the remaining 280 had hitherto declined to contribute to the cost of the litigation or to protect the trustee against loss or the payment of costs or counsel fees. No substantial reasons appear for permitting the bank, as the holder of only $14,000 of the bonds, to defeat the plainly expressed will of the holders of the remainder. *Sage* v. *Central Railroad Co.*, 99 U. S. 334.

The allegation of neglect or collusion on the part of Elwell, as trustee, was found by the Circuit Court to be untrue. The trustee represented the bondholders not only in the proceedings which resulted in the entry of the decree, so that the bondholders were not necessary parties, but he also bound them by his release of errors. His relations to them had not changed between the time of the entry of the decree

and the time of the execution of the release. *Shaw* v. *Railroad Co.*, 100 U. S. 605, 611, 612; *Bank* v. *Shedd*, 121 U. S. 74, 86; *Barnes* v. *Chicago, Milwaukee &c. Railway*, 122 U. S. 1.

The release of errors, although not found in the transcript of the record, is properly brought before this court, for the purpose for which it is presented. In *Dakota County* v. *Glidden*, 113 U. S. 222, 225, this court, speaking by Mr. Justice Miller, said: "But this court is compelled, as all courts are, to receive evidence *dehors* the record affecting their proceedings in a case before them on error or appeal. The death of one of the parties after a writ of error or appeal requires a new proceeding to supply its place. The transfer of the interest of one of the parties by assignment or by a judicial proceeding in another court, as in bankruptcy or otherwise, is brought to the attention of the court by evidence outside of the original record, and acted on. A release of errors may be filed as a bar to the writ. A settlement of the controversy, with an agreement to dismiss the appeal or writ of error, or any stipulation as to proceedings in this court, signed by the parties, will be enforced."

By the provisions of the mortgage to Elwell, he, as trustee, could proceed to collect the mortgage debt, by litigation or otherwise, only at the request of the holders of a majority of the bonds. As appears from the terms of the release, and is not controverted, the majority of such holders desired the litigation to cease. The trustee was authorized to put an end to it, and his waiver of an appeal binds all who act in his name as trustee. The bank was not a party to the suit, and its right to appeal depended entirely upon the action of the trustee. *Ex parte Cutting*, 94 U. S. 14, 21; *Ex parte Cockcroft*, 104 U. S. 578. All that the Circuit Court did was to allow the bank to appeal in the name of the trustee. The bank is bound by all the preceding acts of the trustee, done in good faith. On the facts of the case, the appeal must be considered as the appeal of the trustee, and as barred by his release executed long before the appeal was granted.

*The result is that the appeal must be dismissed, and it is so ordered.*

MR. CHIEF JUSTICE FULLER, having been of counsel in this case, did not sit in it or take any part in its decision.