POLLITZ v. FARMERS' LOAN & TRUST CO. et al.

SOUTHERN PAC. CO. et al. v. POLLITZ.

(Circuit Court, S. D. New York. December 12, 1892.)

1. RAILROAD BONDS—TRUSTEES—AUTHORITY TO REPRESENT BONDHOLDERS IN LITIGATION.
   The trustees of railroad mortgage bondholders represent such bondholders in any litigation relating to the trust, and, where the purpose of the suit is substantially the same as a foreclosure of the mortgage, the fact that the trustee is a party defendant instead of plaintiff is immaterial, and the bondholders are bound by the decree, although they are not parties to the suit.

2. SAME—REORGANIZATION DECREE.
   In a suit to collect certain railroad bonds according to the terms of the original mortgage, it appeard that all of the company's bonds, except plaintiff's, had been surrendered and exchanged pursuant to a reorganization agreement which he refused to accept; that by a judgment of the United States circuit court in Oregon the reorganization had been substantially confirmed; that the trustee of the bondholders was a party defendant to the suit, and fairly represented the rights of all; that the interests of 99 per cent. of the bondholders demanded the judgment; that the court, by its decree, fully recognized the rights of the nonconforming bondholders, providing that the company should execute an indemnity bond conditioned for the payment of the bonds of the dissenting holders, and that plaintiff might recover under the decree all that he was entitled to. A cross bill was filed to compel plaintiff to surrender his bonds, and receive new bonds in lieu thereof, according to the reorganization agreement. *Held,* that the decree properly protected plaintiff's interest; that he must surrender his old bonds, and accept the new ones, as provided for in the agreement; but that he was entitled to the same security afforded the majority bondholders.

3. SAME—RIGHTS OF DISSENTING BONDHOLDER.
   The cross complainant having taken the position throughout the suit that complainant could at any time surrender his bonds and receive new ones in lieu thereof under the Oregon decree, and counsel in their brief having offered to deliver the lieu bonds and cash upon such surrender, the cross complainant was not in a position to insist that complainant had by misconduct forfeited his right to interest.

In Equity. Bill by Carl Pollitz against the Farmers' Loan & Trust Company, the Oregon & California Railroad Company, the Southern Pacific Company, and the Union Trust Company. Cross bill by the Southern Pacific Company and the Oregon & California Railroad

Company against Carl Pollitz. Original bill dismissed. Decree for cross complainant.

W. A. Underwood and Melville Egleston, for complainant and cross defendant.

James C. Carter and William D. Guthrie, for defendants and cross complainants.

COXE, District Judge. The complainant, Carl Pollitz, is the owner of 82 railroad mortgage bonds of the Oregon & California Railroad Company. All of the other bonds—8,523 in number—have been surrendered and exchanged, under a reorganization agreement, for new bonds of the same corporation guarantied by the Southern Pacific Company. The object of this suit is to collect the 82 bonds according to the terms of the original mortgage—at 110 per cent. principal and interest thereon—out of certain sinking-fund moneys in the hands of the defendant the Farmers' Loan & Trust Company, the trustee under the mortgage. Injunctions are prayed for to effectuate this object.

The defenses are: First. That the court has no jurisdiction. Second. That a judgment of the United States circuit court of Oregon which, in substance, confirmed the reorganization and provided for the surrender and payment of the complainant's bonds, is a bar to this action. Third. That all these bonds were purchased by the complainant while acting in a fiduciary capacity as a member of a bondholders' committee which advocated the reorganization. That equity will not permit him to reap profit as an individual by taking a position hostile to his duties and relations as a trustee. The cross bill prays for a decree that Pollitz be required to surrender his bonds and accept the new bonds in lieu thereof.

At the threshold of this controversy stands the Oregon decree. It is admitted that if this decree be valid and binding the bill must be dismissed. But the complainant argues that it is not binding because he was not a party, and, in any view, it was obtained by fraud, and is, therefore, a nullity. Was the complainant a necessary party to the Oregon suit?

In Shaw v. Railroad Co., 100 U. S. 605, the supreme court says:

"The trustee of a railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them. * * * The trustee represents the mortgage, and in executing his trust may exercise his own discretion within the scope of his powers."

In Beals v. Railroad Co., 133 U. S. 290, 10 Sup. Ct. Rep. 314, the court said:

"The former judgment was rendered by a court of competent jurisdiction, to which not only the railroad company that issued the bonds, but the surviving trustee under the mortgage made in the name of another company to secure the payment of those bonds, were made parties. The bondholders were thus fully represented in that suit, and bound by the decree cancelling and annulling the bonds and mortgage, unless the decree was fraudulently obtained."

See, also, Kent v. Iron Co., 144 U. S. 75, 12 Sup. Ct. Rep. 650; Richter v. Jerome, 123 U. S. 233, 8 Sup. Ct. Rep. 106; Bank v. Shedd, 121 U. S. 74, 7 Sup. Ct. Rep. 807; Elwell v. Fosdick, 134 U. S. 500, 10 Sup. Ct. Rep. 598.

These authorities are, in my judgment, conclusive. If the trustee represents the bondholders in all matters relating to his trust it surely must be immaterial what is the form of the action which draws the trust into controversy. Whether plaintiff or defendant he stands sponsor for them. It cannot be possible that he represents them in a foreclosure suit and fails to represent them in an action like this where the principle involved is precisely the same. All law should be, and generally is, based upon reason. For a distinction, like the one contended for, no plausible reason can be suggested.

But it is said that the Oregon decree was obtained by fraud. The complainant, in making the charge, appears to entertain the opinion that the trustee should have bent his entire energies to the protection of the complainant's interests and his interests only. The fact that 99 per cent. of the bondholders entertained one opinion and the complainant another and that the trustee stood as the representative of all alike, seems to have been overlooked. Was it the duty of the trustee to postpone a reasonable and fair adjustment which was the almost unanimous desire of the bondholders, in order that one recalcitrant might use the weapon of delay thus placed in his hands and experiment with the courts for the purpose of obtaining better terms than the rest? If this were his duty there would be more foundation for complainant's accusation. If, however, he owed the complainant no such obligation, the course adopted by the trustee seems proper and, indeed, commendable. Various allegations in the pleadings which joined the issue in the Oregon suit are pointed out as not in accordance with the facts, and numerous acts of the parties are referred to as indicating connivance between the railroad company and the trustee for the purpose of obtaining a hurried and an inequitable decree. It is unnecessary to examine these alleged improprieties in detail because, to my mind, they are inconsequential. Even though the complainant be right regarding them they did not affect his interests injuriously. The pleadings put the court in possession of the salient points upon which the decree was founded.

The trustee by its answer stated that it had at all times refused to cancel the mortgage until all of the outstanding bonds were fully paid and discharged or payment thereof protected and secured by the final decree of the court. In its demand for judgment the trustee prayed that before a decree should be made requiring it to cancel and satisfy the mortgage, the court should grant ample protection to the holders of the outstanding bonds by requiring a sum sufficient to pay the same with interest to be deposited under the order of the court, or that approved security should be given for this payment. The court, therefore, by the allegations of the bill and answer knew all that it was necessary to know. It was aware that the holders of 8,513 bonds wished to exchange their holdings for the new guarantied bonds, and that the holders of 92 bonds, at that time, had refused to surrender or, at least, had not surrendered. No other facts were necessary to

pass the decree. Whether or not there was a dispute as to the bonds being subject to the terms of the committee's agreement; whether or not the railroad company had at all times been willing to issue new bonds upon the conditions of that agreement, were questions not at all germane to the matter which the court had in hand. The court was not misled by these allegations. The theory upon which it proceeded was that all questions regarding the outstanding bonds must be considered in a light most favorable to the bondholders. It dealt with the bonds as if they were valid and subsisting obligations of the railroad company which must be paid in cash to the last dollar due thereon, the moment the holders, whoever they might be, presented them for payment. What more had the holders a right to ask? Had the complainant been a party substantially the same decree must inevitably have been entered. If his bonds had been presented to the court their immediate payment would, probably, have been provided for, but in other respect the decree would have been the same. Certainly the court would not have given a moment's consideration to the question whether the allegations before alluded to were correct or incorrect.

An overwhelming majority wished the plan of reorganization adopted without delay. A very small minority had not assented to this plan. The court, while feeling constrained to respect the wishes of the majority, fully recognized the rights of the minority by providing that the railroad company should execute and deliver a bond of indemnity with approved sureties in a sum equal to double the face value of such outstanding bonds, conditioned that if the said railroad company "shall well and truly pay, or cause to be paid, whatever amounts may be due upon any of the said 92 first mortgage bonds, when and as the same shall have been duly and properly presented for payment, then the said obligation to be void, otherwise to remain in full force and effect." It might have been wiser had the decree directed a sum to be deposited in the registry of the court from which the clerk was to pay the bonds on presentation. But the substitution of an indemnity bond was within the discretion of the court and, in any view, it was a pardonable mistake. Certainly nothing is shown of which to predicate fraud. The court, undoubtedly, was of the opinion that if the nonconforming bondholders were placed in a position where they could not lose a farthing they would have no reason to complain. The interests of 99 per cent. demanded that the decree be promptly granted. The interests of 1 per cent. demanded that whatever was owing to them should be paid. They could ask nothing more. The decree was granted with all rights reserved to the minority. The complainant has no just ground for complaint. The decree was just and proper and it protected all interests. Indeed, it is not easy to see why the complainant on the footing of the Oregon decree could not have recovered, and cannot now recover, all that he is entitled to. As the complainant was not a necessary party to the Oregon litigation, and as the decree therein entered was not fraudulent, it follows that the bill must be dismissed, with costs.

The dismissal of the original bill naturally leads to an allowance of

the prayer of the cross bill. If the suggestions of counsel were correctly understood at the argument no formal or technical objection is raised to the consideration of the cross bill, it being the desire of all that the rights of the parties shall be determined in the pending suit rather than in renewed litigation here or in Oregon. The only question mooted upon this branch of the controversy is the question of interest. It is argued that because of his misconduct interest should be withheld from the cross defendant. It is not clear that the cross complainants are in a position to present this question. Their position throughout has been that the cross defendant could at any time surrender his bonds and receive the new ones in lieu thereof. That this position was stated over and over again is amply shown by the record. Counsel reassert it in their brief and it appears in the cross bill itself. At folio 22 are these words:

"That your orator, the Southern Pacific Company, is ready and willing, and hereby offers, upon the deposit of said 82 bonds with the Union Trust Company of New York under said septempartite agreement, to deliver bonds and make payment in cash in exchange therefor and in respect thereto as in and by said septempartite agreement is provided in respect to such bonds, upon deposit thereof with the said Union Trust Company."

Judgment is demanded that the cross defendant may be "directed and required forthwith to deposit said 82 first mortgage bonds with the Union Trust Company of New York under said septempartite agreement." After all this can the cross complainants now insist that the cross defendant must surrender his bonds and receive an impaired and mutilated security? Assuming that they can, I am of the opinion that the facts will not warrant the court in pronouncing such a judgment.

The question of jurisdiction has not been discussed as I consider that question res judicata so far as this court is concerned. 39 Fed. Rep. 707.

The prayer of the cross bill for the surrender of the old bonds and the delivery of new ones under the septempartite agreement should be allowed, with costs.