PHOENIX FINANCE CORPORATION, a corporation of the State of Delaware, *v.* IOWA-WISCONSIN BRIDGE COMPANY, a corporation of the State of Delaware.

501

(*March* 18, 1940.)

RODNEY and SPEAKMAN, J. J., sitting.

*James R. Morford* (of Marvel and Morford) for plaintiff.

*Daniel F. Wolcott* (of Southerland, Berl, Potter and Leahy), *Fred A. Ontjes* (of Mason City, Iowa) and *William C. Green* (of St. Paul, Minnesota) for defendant.

Superior Court for New Castle County, No. 39, November Term, 1938.

RODNEY, J., delivering the opinion of the Court:

It shall be our endeavor to so compress the facts in this case in such a narrow compass as not to unduly recite the long and sordid story of financial manipulation and mismanagement which has characterized the history of the defendant to such an extent that we wonder that their recital has been confined to reports of civil or equitable proceedings. Great masses of detail are summarized in *Bechtel Trust Co. v. Iowa-Wisconsin Bridge Co.*, (*D. C.*) 19 *F. Supp.* 127, and *First Trust & Savings Bank v. Iowa-Wisconsin Bridge Co.*, (8 *Cir.*) 98 *F. 2d* 416. We shall content ourselves with such statements of fact as may be necessary to make clear our legal conclusions.

The defendant was incorporated in 1928 under the Laws of Delaware, for the purpose of erecting a bridge across the Mississippi River, between the States of Iowa and Wisconsin. After a preliminary period of exploitation by other parties one John A. Thompson, about October, 1930, became interested in the bridge through the instrumentalities of two corporations owned or controlled by him, Thompson & Company and Phoenix Finance System, Inc. After a period during which the building of the bridge was in progress, and on March 19, 1931, the Board of Directors

of the Bridge Co., controlled by Thompson, and of which he was President, authorized the Vice-President and Secretary to borrow $50,000.00 from the Phoenix Finance System, Inc., with interest at 8%, and to execute a mortgage as security therefor. The mortgage was duly executed and delivered, and book entries made to have the appearance that the consideration of $50,000.00 was received by the Bridge Company, but it has been judicially determined (19 *F. Supp.* 137) that no such payment was, in fact, made. The bridge was opened on June 17, 1931, and shortly thereafter steps were taken to further complicate the elaborate financial transactions of the company. On December 22, 1931, a bond issue of $200,000.00, secured by a Deed of Trust, was authorized, and from this point of the distribution of these bonds the facts became acutely material to the legal questions of this case.

At about the time of the distribution of the bonds the Phoenix Finance Corporation, the present plaintiff, became incorporated and, with the same officers as the Phoenix Finance System, Inc., took over all the assets of the old corporation.

Upon the distribution of the bonds it appears that $177,600.00 of the $200,000.00 issue were held by Phoenix Finance Corporation, either by issue to that corporation or to its predecessor, Phoenix Finance System, Inc.

Default having been made in the payment of interest the Phoenix Finance Corporation requested the Trustees, Bechtel Trust Company (afterwards the First Trust and Savings Bank) and A. S. Schubert, to foreclose the mortgage or Deed of Trust. This proceeding was brought in the United States District Court for the Northern District of Iowa, the Trustees being residents of Iowa and the bridge company being a corporation of the State of Delaware. Subsequently other stockholders were allowed to intervene and become parties to the action, and in December, 1933,

the Phoenix Finance Corporation, a corporation of the State of Delaware, was brought in as co-plaintiff with the Trustees. The admission of Phoenix Finance Corporation, a Delaware Corporation, as plaintiff against the Bridge Company, a Delaware Corporation, as defendant, gives rise to the question as to the defeat of diversity of citizenship and the consequent loss of jurisdiction of the Federal Court, and around this question cluster some of the difficulties hereinafter discussed.

The questions surrounding the foreclosure of the mortgage were referred to a Master who, after lengthy hearings, made his report. In the report the Master found the only valid bonds amounted to $27,125.00, and that $177,875.00 were invalid. Of the $27,125.00 held valid by the Master $15,000.00 were held by persons unconnected with this litigation and need not be further considered. The balance of $12,125.00 held by Phoenix Finance Corporation will be hereinafter briefly mentioned. It appears that the Phoenix Finance Corporation had three holdings of the bonds, $60,500.00; $97,000.00 and $20,100.00. As to the $60,500.00 holding, the Master held it invalid in its entirety, as involving an unlawful sale to the corporation of 517 shares of Class A Preferred Stock. Of the holding of $97,000.00 the Master held $88,000.00 invalid, and this included the claim of the $50,000.00 mortgage hereinbefore referred to, but held $9,000.00 valid as representing an amount paid in discharge of a mechanic's lien. Of the remaining holding of $20,100.00 the Master held $16,975.00 invalid, but held valid $3,125.00, represented by one of the notes herein sued upon. The $9,000.00 item and $3,125.00, amounting to $12,125.00, were the only bonds held valid in the hands of Phoenix Finance Corporation.

Comprehensive and detailed exceptions were taken to the Master's report, and the Phoenix Finance Corporation expressly objected that in the invalidation of $16,975.00

as part of the holding of $20,100.00 the Master had over-looked the validity of the note for $2,000.00 now sued on in this action, and as collateral for which bonds were given, while he, the Master, had sustained the validity of bonds of $3,125.00 given for the other note herein sued on.

The findings of the Master were confirmed by the District Court (*Bechtel Trust Co. v. Iowa-Wisconsin Bridge Co., (D. C.)* 19 *F. Supp.* 127) with the exception of the bond items of $9,000.00 and $3,125.00, which had been held valid by the Master, in the hands of Phoenix Finance Corporation. As to these two items the Court held the Master's conclusions erroneous, and these bonds were also by it held invalid. The Court held that the Phoenix Finance Corporation was charged with the equities existing against its predecessor, the Phoenix Finance System, Inc., and the items were on this ground disallowed.

The decree of the District Court was affirmed by the Circuit Court of Appeals (8 *Cir.*, 98 *F.* 2*d* 416) and writ of certiorari denied by the Supreme Court, *Phoenix Finance Corp. v. Iowa-Wisconsin Bridge Co.*, 305 *U. S.* 650, 59 *S. Ct.* 243, 83 *L. Ed.* 420; *Id.*, 305 *U. S.* 676, 59 *S. Ct.* 356, 83 *L. Ed.* 437.

The foregoing facts must be considered in the light that the sole plea in the present case is *res adjudicata.* In other words, we are to determine whether the action of the Court in the foreclosure suit which resulted in the invalidation of bonds necessarily passed upon the validity of the promissory notes for which bonds were ostensibly issued as collateral.

The defendant plausibly argues that the bonds given for the promissory notes were held invalid solely because the debts for which they purported to be given were without consideration and invalid, and that the invalidity of the bonds was only based upon the invalidity of the notes, and

that therefore the invaladity of the notes has been directly adjudicated in a court of competent jurisdiction.

The plaintiff with equal plausibility argues that as to the promissory notes it has never had its day in any court of competent jurisdiction. It contends that in the proceedings in Iowa, which allegedly passed upon the notes it, the defendant, either was or was not a necessary or indispensable party; that if it was not a necessary party, but merely a formal party in connection with the bonds, then its rights as to the promissory notes could not have been legally adjudicated; that if it was a necessary party for the adverse adjudication of rights arising from the promissory notes, then the inclusion of the plaintiff, a Delaware corporation, as party plaintiff, defeated the jurisdiction of the court by reason of diverse citizenship, because the defendant, Iowa-Wisconsin Bridge Company, was also a Delaware corporation.

In the consideration of these questions we should draw some preliminary distinction between the two notes. The note for $3,125.00, dated January 20, 1933, was expressly held valid by the Master, who also sustained the validity of the bonds given therefor. This conclusion of the validity of the note was not changed by the decree of the court overruling the Master upon this point. The Court in effect said to the Phoenix Finance Corporation,

"This is a valid note but these bonds cannot be validly issued therefor because of the actions of your predecessor, the Phoenix Finance System, Inc., whose inequities or iniquities you assumed, because you are substantially the same corporation."

The remaining note of $2,000.00 was not expressly mentioned by the Master or Court, and its inclusion as a basis for a portion of the $16,975.00 bonds can only be arrived at by mathematical computation. Certain general principles, however, are applicable to both notes and will be considered in the treatment accorded them.

■ It is hardly necessary in this case to enter upon any extended consideration of the principle of *res adjudicata*. It is a general principle often held in this State, and seemingly admitted by the present parties, that a judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies in other actions in the same or other tribunal of concurrent jurisdiction, as to any issue necessary to the first decision and actually litigated and determined in the former action. It is only the application of this principle which creates difficulty.

Now, of course, the very essence of *res adjudicata* requires that that tribunal whose judgment is sought to be made final should have had jurisdiction of the subject matter and of the parties sufficient to warrant its action.

Tested by this principle we must first see whether the District Court in Iowa, in a proceeding to foreclose a mortgage securing a bond issue, brought by the Trustees named therein, had jurisdiction over the individual bond holders to the extent that it could determine any rights of the bondholders which were disconnected either with the bonds or with the trust property securing such bonds. In other words, did the representation of the bondholders by the Trustees extend beyond the consideration of the mortgage, or of the bonds secured thereby, or did the determination of other matters require the presence of the bondholder himself?

We think that in a suit to foreclose a mortgage securing a bond issue the doctrine of representation of the bondholders by the Trustee means that the Trustee represents all bondholders in all things relating to their common or individual interest in the trust property, or in the bonds, but that such representation does not extend beyond a consideration of the trust property, or of the bonds secured

thereby. The Trustee cannot, by implication, be held to represent the bondholders beyond the terms of the instrument under which, alone, the Trustees have their origin or existence. The subject matter upon which the representation would apply must be one as to which both the Trustee and the person represented have an interest. In this case we are not directly concerned with the question as to whether the representation of a bondholder by a Trustee includes an inquiry as to the validity of the bonds themselves, or at what stage of the proceeding such inquiry should be had. No such question is here presented, for we are in no way interested in the bonds, as such.

The foregoing conclusion is not, we think, in any way inconsistent with *Kerrison v. Stewart*, 3 *Otto*, 155, 93 *U. S.* 155, 23 *L. Ed.* 843; *Mercantile Trust Co. v. Schlafly*, (8 *Cir.*) 299 *F.* 202; *Richter v. Jerome*, 123 *U. S.* 233, 8 *S. Ct.* 106, 31 *L. Ed.* 132; *Beals v. Illinois, etc., R. R. Co.*, 133 *U. S.* 290, 10 *S. Ct.* 314, 33 *L. Ed.* 608; or *Elwell v. Fosdick*, 134 *U. S.* 500, 10 *S. Ct.* 598, 33 *L. Ed.* 998.

The note of $3,125.00 here sued upon was held by the Master to be a valid obligation of the present defendant, in the hands of the present plaintiff. The validity of the note was not questioned by the District Court, and the Circuit Court of Appeals expressly says (98 *F.* 2d 426), "This is a just claim." The District Court and the Circuit Court of Appeals, however, said that this concededly valid note could not be used as valid consideration sustaining the issuance of bonds, because of some items of fraud on the part of Phoenix Finance System, Inc., the predecessor of the present plaintiff, which those courts found chargeable to the latter. So far as the jurisdiction of the court was concerned, the holding that, in a suit to foreclose the mortgage, the note for $3,125.00 did not constitute a valid basis for the issuance of bonds was one thing, and a holding concerning the note itself, and disconnected from the bonds, was an

entirely different thing. This difference may be shown by the necessity of Phoenix Finance Corporation as a party to the proceeding. We have held that Phoenix Finance Corporation was not a party, generally, by representation of the Trustee. It is axiomatic that the rights of Phoenix Finance Corporation, generally, could not be determined without its presence in the suit, either in person or by some privy. Let us then see what relation Phoenix Finance Corporation had to the foreclosure proceeding. The foreclosure proceeding was brought solely by the Trustee and the jurisdiction of the Court was based upon diversity of citizenship. Phoenix Finance Corporation was not made a party upon its own application, but was brought in by intervention during the pendency of the litigation. When it objected that its presence, as a Delaware corporation, destroyed the diversity of citizenship, and thus the jurisdiction of the court, it was held by the District Court and approved by the Circuit Court of Appeals that Phoenix Finance Corporation was only a formal party, and not a necessary party at all. The District Court said (19 *F. Supp.* 142):

"The only effect of bringing in the Phoenix Finance Corporation was by admissions in testimony to establish the status of that corporation as the holder and owner of about 90 per cent of the bond issue. That so far as jurisdictional considerations are concerned, that corporation was merely a formal and not an indispensable party."

The Circuit Court of Appeals also said that for the purpose of the foreclosure suit, including the validity of the Trust Deed and the amount of the debt secured thereby, the presence of Phoenix Finance Corporation was in no respect essential, and that its inclusion only involved the validity of certain bonds, which was ancillary to the foreclosure proceeding. 98 *F.* 2d 421.

We do not question the conclusions reached by the District Court or the Circuit Court of Appeals, hereinbefore recited. The questions considered by them are in no re-

spect similar to our own. Both Courts considered merely a foreclosure proceeding and the validity of bonds secured by the mortgage. They considered the debt merely as it constituted a valid basis for the bonds. Neither Court could have considered any indebtedness or claim existing in favor of or against either company which had no connection with the bond issue, and both Courts considered the indebtedness only as it represented a valid basis for the bonds. Both Courts held the note for $3,125.00 a valid indebtedness, but that it could not form a valid foundation to support the issue of bonds, because of countervailing equities. While it was held that the indebtedness of the Bridge Company to the Phoenix Finance Corporation was not such that it could constitute a basis for the issue of bonds, because of fraud exercised upon the Bridge Company, yet there was not and could not have been any adjudication of any amount as due to the Bridge Company from the Phoenix Finance Corporation. The Court contented itself with the invalidation of the bonds—the subject of the judicial inquiry. For this purpose we may assume the correctness of cited opinion that Phoenix Finance Corporation was merely a formal and not a necessary or indispensable party.

We cannot escape the conclusion that for the general adjudication of indebtedness between the Bridge Company and Phoenix Finance Corporation, disconnected with questions as to validity of bonds, the Phoenix Finance Corporation would be an indispensable party. Both the District Court and the Circuit Court of Appeals having held that in the proceedings before those Courts the Phoenix Finance Corporation was a mere formal party and its presence not necessary or indispensable, then it must follow, we think, that the questions considered by those Courts were not the same as the questions confronting us. The decree of the Court itself is some evidence of the questions

upon which the Court acted. The decree referred exclusively to the mortgage and the bonds, as such.

The defendant contends that the bonds were issued as collateral for the two notes (expressly for the $3,125.00 note, and impliedly for the $2,000.00 note) ; that when the collateral has been voided for want of consideration and the sole consideration for the collateral was the pre-existing debt, that then the adjudication of invalidity of the collateral is an adjudication of the invalidity of the debt itself. We do not dispute the correctness of this principle as an abstract proposition. When, however, the sole matters before the adjudicating tribunal relate to the collateral itself and not to the antecedent debt, and the only parties before the Court are connected with the collateral and not with the antecedent debt, then we think the principle fails of application and the invalidity of the collateral does not necessarily destroy the validity of the underlying indebtedness.

The correctness of this conclusion is imperative, we think, unless, indeed, we are in error in our first conclusion, viz. that the Phoenix Finance Corporation is not for general purposes a party to the suit for foreclosure, by reason of its representation by the Trustees under the Deed of Trust.

For the general litigation of the rights concerning the two notes here in suit and disconnected with any question of collateral, the Phoenix Finance Corporation was a necessary party; in no such sense was it a party to the Iowa proceedings, but was held to be a mere formal party; if it had been a necessary or indispensable party to the proceedings in Iowa the Court there would have been without jurisdiction, because there would have been no diversity of citizenship.

We hold that the proceedings in Iowa, as shown by the

record introduced in this cause, do not show a valid de-
fense to the present proceedings under the plea of *res
adjudicata*. That being the only plea, judgment will be en-
tered in favor of the plaintiff and against the defendant.