## NATIONAL SALT CO. v. INGRAHAM.

(Circuit Court of Appeals, Second Circuit. January 17, 1906.)

### No. 44.

1. BILLS AND NOTES—CERTIFICATES OF CORPORATION—NEGOTIABILITY.

Certificates of indebtedness of a corporation containing an unconditional promise to pay to the payee, or order, a certain sum of money, at a time capable of exact ascertainment, contain all the requisites of negotiable instruments, and their negotiability is not impaired by the fact that by their terms the maker may pay them before maturity.

2. SAME—ACTION—DEFENSES.

The fact that a purchaser of negotiable certificates of indebtedness issued by a corporation had notice that they were issued in payment for the stock of another corporation, which it had power to buy, does not charge him with notice that the transaction was in violation of an anti-trust law of the state, nor put him on inquiry as to its legality, and in the absence of actual proof that he purchased mala fides the corporation is not entitled to show such facts as a defense when sued on the certificates.

3. JUDGMENT—MATTERS CONCLUDED—TRUSTEE DEFENDANT AS REPRESENTATIVE OF BENEFICIARIES.

Defendant corporation purchased the stock of another corporation and issued negotiable certificates of indebtedness in part payment. It also deposited the stock purchased, together with stock of its own, which was to be exchanged therefor, with a trustee which was authorized only to hold and manage the same, and to collect the dividends thereon and apply them in payment of the certificates until they were fully paid, when the stock should be delivered to the parties entitled thereto, and the trust should end. Defendant afterward brought suit in a state court to annul the contract on the ground that it was in restraint of competition and in violation of the laws of· the state, making parties thereto the defendants the selling stockholders, the corporation, the trustee, and certain certificate holders, including plaintiff, who was a purchaser of certain of the certificates. The court decreed the transaction void and directed the stock to be surrendered, but dismissed the suit without prejudice as to plaintiff. *Held*, that the decree against the trustee concluded plaintiff only to the extent to which it determined his rights or interest in the trust property, and constituted no defense to an action by him against defendant on his certificates.

In Error to the Circuit Court of the United States for the Eastern District of New York.

See 139 Fed. 684.

H. B. Twombly, for plaintiff in. error.

G. S. Ingraham, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. In ordering judgment for the plaintiff, the court below ruled that the certificates of indebtedness made by the defendant were not created ultra vires; that the plaintiff was a bona fide purchaser, and the defense that they were executed upon an illegal consideration was therefore not available to the defendant; and that the plaintiff was not estopped from asserting the validity of the certificates by a decree of the Ohio state court declaring them void. The assignments of error challenge the correctness of this ruling.

The facts in this case, so far as they bear upon the defense of ultra vires, are fully stated in the opinion of this court reported in 130 Fed. 676. We there decided that the agreement made by the defendant with the stockholders of the Ohio corporation upon the purchase of their shares, whereby the vendors exchanged their shares for certain shares of the preferred and certain shares of the common stock of the defendant, together with certain money payments to be made as provided in the certificates, was not an agreement whereby the common stock· transferred to them was constituted preferred stock, nor one guarantying dividends to them upon the stock transferred, and consequently was not ultra vires on the part of the defendant; that it was an agreement by the defendant to pay the vendors partly in its own stock and partly in money, and to issue its obligation for the payment of the money in such installments as the parties had agreed to; and that, although the agreement contemplated that the money payments would practically secure to the holders of the stock thus trans-

ferred all the benefits which they would have derived from an agreement by the defendant that the common stock should be preferred stock, and dividends be guarantied upon both the preferred stock and the common stock, inasmuch as such an agreement was not prohibited by the organic law of the defendant, the expectation or intention of the parties was of no moment so long as they adopted legitimate means to effect their scheme. In other words, we held that whether a corporate act or agreement is ultra vires or not is not a question of purpose or intention, and does not in the least depend upon the state of mind of those who participate in it. We see no reason to change our views upon the subject. The corporation was authorized by its charter to purchase the stock of the Ohio corporation. It made the purchase upon terms which it was authorized to offer and fulfill, and which did not contravene any provision of its organic law, and pursuant to an agreement which was carefully devised so as not to be obnoxious to that law; and, although the vendors were by the agreement placed in a position where they would receive the same practical benefit under it as though it had been one which the defendant would have had no right to make, they could not be deprived of these benefits, and the defendant had not entered into an unauthorized obligation. It follows that the ruling of the court below adverse to the defendant upon the defense of ultra vires was correct.

If the certificates were negotiable paper, the court below properly ruled that the defense that they were executed as part of a scheme in restraint of trade prohibited by the so-called anti-trust law of Ohio could not be raised as against a purchaser of the certificates who had bought them before maturity and without notice of the invalidating facts. The certificates were instruments containing a promise by the defendant to pay to the payee or order a specified sum of money in certain equal semiannual installments. They also provided that at any time before any default in payment the defendant should be discharged from the payment of all further installments by paying the amount to the American Trust Company, of Cleveland, "in trust to pay the same to the registered holder hereof upon demand." They also contained recitals respecting the terms of the agreement between the defendant and the Ohio corporation, and showing that the defendant, to secure the payment of the certificates, had deposited the stock in that corporation, acquired by it, with the American Trust Company as trustee, pursuant to the terms of the declaration of trust executed by the defendant and filed at the office of the trust company. The contract fulfills the usual requisites of negotiable paper. It provides for the unconditional payment to the payee therein or order of a certain sum of money at a time capable of exact ascertainment. Its negotiability is not impaired because it permits the maker to pay the principal before maturity. Riker v. Sprague Manufacturing Co., 14 R. I. 402, 51 Am. Rep. 413; Mattison v. Marks, 31 Mich. 421, 18 Am. Rep. 197. In Ackley School District v. Hall, 113 U. S. 135, 5 Sup. Ct. 371, 28 L. Ed. 954, it was held that a provision in a municipal bond, by which its amount was payable at the pleasure of the maker at any time before due, did not affect its complete negotiability. The re-

citals in the certificates did not qualify the obligation of the maker or the holder, or incorporate to any extent into the contract the terms of the trust agreement mentioned therein. If, as in cases like Mc-Clelland v. Norfolk Southern Railroad Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397, the recitals had made the principal or interest payable upon the terms mentioned in the deed of trust, those terms would, of course, have become a part of the promise, and the negotiable character of the instrument would have to be ascertained by reference to them. We have no doubt that the certificates were negotiable paper within the rule that protects an innocent holder who has purchased it before maturity from defenses which might exist between the original parties. It is not enough to defeat this protection that the purchaser may have had knowledge of circumstances which would excite suspicion in the mind of a prudent man, or was guilty of gross negligence in his failure to make inquiry about facts which could have been ascertained. His protection is complete unless he had actual knowledge, or notice which was equivalent to knowledge, of the invalidating facts. The recitals in the certificates, and in the advertisements offering them for sale, were sufficient to charge the plaintiff with notice that the certificates had been issued by the defendant as an incident of its purchase of the stock of the Ohio company; but they did not indicate that such purchase was part of any illegal scheme between the defendant and the Ohio corporation to prevent competition or effect any of the purposes prohibited by the statutes of Ohio. Unless the mere fact that one corporation has purchased the stock of another, or has acquired all the property and business of another, denotes that it has done so for the purpose of restraining trade or stifling competition, the recitals were not sufficient to charge the defendant with any knowledge of the illegality of the transaction, or to put him upon inquiry with respect thereto. The proposition that such a purchase evinces illegality is hardly capable of serious discussion. A purchase which is perfectly consistent with a legitimate purpose raises no implication of a guilty one. Before the defendant was entitled to offer evidence for the purpose of establishing the illegitimate character of the transaction, it was incumbent upon it to satisfy the trial judge that the plaintiff had acquired the certificates mala fides. The trial judge was fully justified in ruling that the defendant had not done so. Therefore his ruling excluding evidence offered by the defendant to prove the illegal character of the purchase was correct.

The decree of the Ohio Court, relied upon by the defendant as an estoppel precluding the plaintiff from asserting the validity of the certificates, was rendered in an action in equity, in which the present defendant was plaintiff, brought to have its purchase of the stock of the Ohio corporation and all its contracts arising therefrom, including the certificates, declared void, for the reason, among others, that they were part of a scheme restraining trade and to effect an unlawful combination between the two corporations. The defendants in that suit were the Ohio corporation, various stockholders of that corporation, the American Trust Company of Cleveland, and various holders of

the certificates of indebtedness, including the present plaintiff. The present plaintiff appeared and answered the petition, and by his answer alleged the validity of the transaction assailed, and asked for an affirmative decree for the payment of his certificates. By the decree the cause was dismissed without prejudice to the present plaintiff, and as between all the other parties to the action the agreements were declared void, the stock which had been deposited with the trustee was ordered to be surrendered, and the purchase was in all respects rescinded.

It is now argued for the plaintiff in error that the present plaintiff as a defendant in the former action was bound by the decree because the American Trust Company was a party defendant, and as trustee represented all the certificate holders, including the present plaintiff. Upon this theory none of the certificate holders were necessary parties. They were needlessly made defendants in the action, and the dismissal of the cause as to the present plaintiff was of no effect. It is unnecessary for present purposes to consider whether this theory is sound or not, as we are of opinion that the decree against the trustee concluded the plaintiff only to the extent to which it determined his rights or interest in the trust property. The trust company was for certain purposes the agent and fiduciary of the certificate holders. By the terms of the trust agreement, it was its duty to hold, manage, and control the shares of stock which were deposited with it until the certificates should be fully paid, and until such time it was to collect the dividends accruing upon the shares and apply them towards the payment of the certificates; but it had no power to sell the shares or to enforce in any way the payment of the certificates. It was a necessary party to the Ohio suit, because in its absence there could have been no effectual decree annulling the trust agreement. Its powers as a trustee were more limited than those of the ordinary trustee for bondholders upon a trust deed or mortgage. The latter represents the bondholders in all legal proceedings affecting the trust property, and in a suit to foreclose the mortgage, or to annul it, the bondholders are not necessary parties, and whatever the trustee does, in the absence of fraud or bad faith on his part, concludes them in respect to their equitable title to the trust estate. We are aware, however, of no authority for the proposition that he represents them respecting matters as to which he has no control and concerning which he has no voice. He is not a necessary or a proper party in a suit at law by a bondholder to recover the principal or interest upon the bonds, because he has no title legal or equitable to the bonds, or to the moneys payable by the terms of the bonds. The decisions in which it has been held that the bondholder was concluded by the former adjudication against the trustee were made in cases in which the bondholder sought by a subsequent suit to subject the trust estate to the payment of his bonds. The principle of the decisions is stated in Kerrison v. Stewart, 93 U. S. 160, 23 L. Ed. 843, as follows:

"It cannot be doubted that under some circumstances a trustee may represent his fiduciary in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such

obligations that those for whom he holds will be bound by what is done against him as well as by what is done by him. * * * If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust, or to one by a stranger against him to defeat it in whole or in part."

In Shaw v. Railroad Co., 100 U. S. 611, 25 L. Ed. 757, the doctrine is thus stated:

"The trustee of the railroad mortgage represents the bondholders in all legal proceedings carried on by him affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them."

Again, in Richter v. Jerome, 123 U. S. 233, 246, 8 Sup. Ct. 106, 31 L. Ed. 132, the court said:

"As bondholders claiming under the mortgage, they can have no interest in the security except that which the trustee holds and represents. If the trustee acts in good faith, whatever binds it in any legal proceedings it begins and carries on to enforce the trust, to which they are not actual parties, binds them."

Conceding for the sake of argument that the present trustee had as extensive a capacity as that of the ordinary mortgage trustee, he certainly had no power to represent the certificate holders for any purpose other than that of the management and protection of the trust estate. While the decree against him will effectually preclude the certificate holders from resorting to the trust fund for the collection of the moneys due them, it does not in our opinion impair in the slightest the rights of those not made defendants to the suit to recover at law the amount due thereon from the present defendant. We conclude that the trial judge properly ruled that the former decree was not an estoppel against the plaintiff.

The assignments of error are without merit, and the judgment is affirmed.