RAPHAEL v. WASATCH & J. V. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1912.)

No. 3,712.

1. JUDGMENT (§ 588*)—RES JUDICATA.

Complainant's father, since deceased, owned certain railroad bonds secured by a deed of trust which was subject to two other mortgages of underlying companies. These having been foreclosed under the power of sale contained therein, complainant's father sued to set aside such sales for fraud and was defeated; the court rendering judgment sustaining the sales. *Held*, that such judgment was res judicata against the right of complainant to foreclose the junior deed of trust securing bonds which he received from his father's estate.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062, 1090; Dec. Dig. § 588.*]

2. JUDGMENT (§ 677*)—RES JUDICATA—PARTIES.

Where the trustee in a junior deed of trust securing railroad bonds, which was subject to mortgages on the property of underlying companies, was a party to a suit to set aside a foreclosure of such mortgages, a judgment sustaining the foreclosure was conclusive on the bondholders represented by such trustee.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062, 1193; Dec. Dig. § 677.*]

Appeal from the Circuit Court of the United States for the District of Utah; John A. Marshall, Judge.

Suit by Russell Sage Raphael against the Wasatch & Jordan Valley Railroad Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Thomas Bracken, of New York City, and Hiram E. Booth, of Salt Lake City, Utah (Delos McCurdy, of New York City, on the brief), for appellant.

Henry McAllister, Jr., of Denver, Colo. (Joel F. Vaile, of Denver, Colo., and Waldemar Van Cott, E. M. Allison, Jr., and William D. Riter, all of Salt Lake City, Utah, on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. This action was brought in the Circuit Court of the United States for the District of Utah, to foreclose a mortgage executed by the Wasatch & Jordan Valley Railroad Company, May 1, 1879, to the Union Trust Company of New York, as trustee, to secure the payment of 1,200 bonds of $1,000 each; plaintiff alleging that he is the owner and holder of 585 of the bonds covered by said mortgage. To this action the defendants pleaded a former adjudication, to wit, an action brought by Nathaniel W. Raphael, then owner and holder of 579 of the 585 bonds held by this complainant. The usual replication was filed to said plea of former adjudication, upon trial said plea was sustained, and plaintiff's bill dismissed, from which judgment of the court complainant prosecutes this appeal.

[1] From the evidence it appears that, on the 7th day of January, 1902, Nathaniel W. Raphael, on his own behalf and on behalf of all other bondholders similarly situated, who might choose to join as complainants and bear a pro rata portion of the expense of the suit, filed his bill in the Circuit Court of the United States for the District of Utah, against the Wasatch & Jordan Valley Railroad Company, the Rio Grande Western Railway Company, the Union Trust Company of New York, as trustee, and others, as defendants, in which bill he alleged the execution of the mortgage from the Wasatch & Jordan Valley Railroad Company, of date May 1, 1879, to the Union Trust Company of New York, as trustee, to secure the issue of 1,200 bonds of the denomination of $1,000 each; that 884 were issued. He alleged his ownership of 579 of the bonds, with interest coupons thereto attached, for the interest which fell due November 1, 1899, and subsequently, that the interest had not been paid, that he had made written demand upon the defendant, the Union Trust Company of New York, to declare the principal of said bonds due and payable, and to institute a suit to foreclose said trust deed, and alleged that said Trust Company declined to bring suit for foreclosure of said trust deed, and alleged that, because of the refusal of said trustee to act as aforesaid, and because the defendant the said Wasatch & Jordan Valley Railroad Company failed to pay the said interest coupons, and more than six months had elapsed since demand of payment was made, that he, as owner of said 579 bonds, elected to declare, and did declare, the principal of said bonds due and payable. He further alleged that the Wasatch & Jordan Valley Railroad Company was organized in April, 1879, under and pursuant to the laws of the territory of Utah, by the consolidation of a railroad organized under the laws of said territory, called the Bingham Canon & Camp Floyd Railroad Company, and a certain other railroad corporation, organized under the laws of said territory, called the Wasatch & Jordan Valley Railroad Company. The bill further showed that, at the time of said consolidation, there was outstanding a trust deed covering that part of the railroad owned by the said old Wasatch & Jordan Valley, Railroad Company, dated April 10, 1873, to secure payment of 710 bonds of the old Wasatch & Jordan Valley Railroad Company, of the denomination of $500 each; that at the time of said consolidation there was also outstanding a trust deed executed by the Bingham Canon & Camp Floyd Railroad Company, dated June 3, 1874, securing the payment of 300 bonds of said Bingham Canon & Camp Floyd Railroad Company, of the denomination of $1,000 each; that each of said trust deeds issued by said underlying companies contained a power of sale, authorizing the trustees therein named to sell the mortgaged premises, in default of payment of the interest or principal of the bonds, and that the trustees purported to sell, under the powers of sale expressed in said trust deeds, to the Denver & Rio Grande Western Railroad Company, a railroad corporation organized and existing under the laws of the territory of Utah, on the 29th day of December, 1881, the railroad and equipment described in said trust deeds; that the trustees executed to said company a deed of con-

veyance thereof, covering the properties therein described, which was, by the bill shown to be the same properties covered by the trust deed of May 1, 1879. Complainant alleged the invalidity of said foreclosure sales, charging fraud and various irregularities, and prayed in his bill as follows:

"Wherefore, complainant prays that it be decreed:

"1. That said foreclosure sales, under said underlying mortgages by said George M. Young, by said Charles W. Scofield and George T. M. Davis, as trustees, be declared illegal and be set aside, and complainant be allowed to redeem on his own behalf and on behalf of the other bondholders secured by the said trust deed of May 1, 1879, the railroad properties so sold upon paying the amount found to be due upon an accounting being first had.

"2. That an accounting be had by the defendant the Rio Grande Western Railway Company of the use and occupancy of the said mortgaged premises and of the said 11½ miles of extensions, not only while in its own possession, but while in the possession of the Denver & Rio Grande Western Railway Company, and that the said defendant the Rio Grande Western Railway Company be decreed to pay the amount such accounting shall show to be due for the use and occupation of said property.

"3. That an account be taken of the amount due of principal and interest on the said bonds outstanding secured by said trust deed of May 1, 1879, and the said premises be decreed to be sold according to law and the rules and practice of this court, should the said defendant the Wasatch & Jordan Valley Railroad Company fail to pay, upon a day to be named by this court, the amount found to be due upon said accounting being had.

"4. That the defendant the Wasatch & Jordan Valley Railroad Company, and all persons claiming under said last-named company, may be barred and foreclosed of all right, claim, lien, and equity of redemption in and to the said mortgaged premises described in the said trust deed of May 1, 1879.

"5. That in the foreclosure sale of the property described in said trust deed of May 1, 1879, said bonds issued and outstanding under said trust deed may be ratably received in payment by any purchaser or purchasers of said described mortgaged property, provided sufficient amount in cash is paid by said purchaser or purchasers to pay the costs and expenses of this action.

"6. That a receiver be appointed at once to take possession of and operate said railroad property described in said trust deeds, May 1, 1879, during the pendency of this suit, and that a writ of injunction be issued out of this court restraining the defendant the Rio Grande Western Railway Company, its officers and agents, from in any manner interfering with the receiver or disposing of said railroad properties during the pendency of this suit.

"7. That complainant may have such other or different relief as may be just and equitable."

The Union Trust Company, though duly served with process, defaulted, and a decree pro confesso was entered against it. Other defendants joined issue, evidence was taken, and the cause submitted to the court. The trial court found upon the issues certain facts, among them being the following:

"First. The complainant does not occupy the position of an innocent purchaser for the value of the 579 bonds held by him. * * *

"Second. There is no substantial evidence of any fraud or improper conduct on the part of the trustees in the underlying mortgages of the old Wasatch and Bingham roads, participated in by the Denver & Rio Grande Railway Company, to prejudicially influence or affect the sale of the properties to the Denver & Rio Grande Western Railway Company.

"(a) The properties brought their fair and reasonable value at the sale, and the claim that they were sold for such a grossly inadequate sum as to be in and of itself evidence of fraud is entirely unsupported by the proof.

"(b) There was an undoubted default in the payment of interest on both the old Wasatch and Bingham bonds.

"(c) There is no substantial evidence that there were any net earnings in 1880 or 1881, of either of these last-mentioned roads, applicable to the payment of interest on their bonds, and certainly no evidence that any one, and much less any one whose acts are imputable to the defendant the Rio Grande Western Railway Company or its predecessor, fraudulently concocted a scheme to divert·net earnings to other objects for the purpose of creating a fictitious and false necessity to foreclose the mortgages.

"(d) Any and all other suggestions of actual fraud found either in the bill or argument by counsel are without substantial foundation.

"Third. There were no such irregularities attending the execution of the powers of sale found in either the old Wasatch or Bingham mortgages as to invalidate the sales made. * * * *"

The court entered a decree dismissing complainant's bill. Thereupon complainant appealed to this court, and the decree was affirmed. Raphael v. Rio Grande Western Ry. Co., 132 Fed. 12, 65 C. C. A. 632. (A statement of the facts will there be found recited much more in detail than is thought necessary to now state them.) Raphael petitioned the Supreme Court for a writ of certiorari, which was denied. 198 U. S. 587, 25 Sup. Ct. 804, 49 L. Ed. 1175.

The mortgage of May 1, 1879, under which complainant claims, was subject to the two mortgages before mentioned of the underlying companies, which were foreclosed by virtue of the power of sale in them contained in December, 1881, and it was necessary for Nathaniel W. Raphael, in his action of foreclosure, to avoid and have set aside as invalid the foreclosure sales of December, 1881, for, as said by Judge Hook, rendering the decision of this court in that case, in his statement of facts:

"If the trustee's sale of 1881 should be sustained against complainant's attack, the lien of the second mortgage, which was given to secure the bonds held by him, is concededly cut off and foreclosed."

It is very apparent, then, that it was necessary for Nathanial W. Raphael, in his suit to foreclose the mortgage of May 1, 1879, to establish that it was an existing lien upon the property. This could only be done by showing that the trustees' sales in December, 1881, were invalid. That was the principal and prime issue before the court. It was adjudicated in that case that the trustees' sales of 1881 were valid, and hence that the lien of the mortgage of May 1, 1879, no longer existed as a lien upon the property, and could not be foreclosed as such. The complainant in the case before us, Russell Sage Raphael, acquired the ownership of 579 of the bonds sued upon from the estate of his father, Nathaniel W. Raphael, being the bonds upon which his father's action was based. As to them he was clearly in privity with his father.

[2] As to the remaining 6 bonds, which he has subsequently purchased, he is equally bound by that decree, for the reason that the Union Trust Company, trustee of the mortgage, was a party to that action and bound by the judgment therein. It being a party to that action, he, as beneficiary, is equally bound. In Woods v. Woodson, 100 Fed. 515–519, 40 C. C. A. 525, 529, Judge Thayer, writing the opinion for this court, said:

"It is further claimed in behalf of the appellant that the decree against the Farmers' Loan & Trust Company, adjudging the invalidity of the joint deed of trust, is not binding upon him, because he was not a party to the suit in which the decree was rendered, even if it is binding upon his trustee, the Farmers' Loan & Trust Company, who was duly served with process. This point, however, must be ruled against the appellant on the strength of the following cases: Beals v. Railroad Co., 133 U. S. 290, 10 Sup. Ct. 314, 33 L. Ed. 608; Kerrison v. Stewart, 93 U. S. 155, 160, 23 L. Ed. 843; Shaw v. Railroad Co., 100 U. S. 605, 611, 25 L. Ed. 757; Richter v. Jerome, 123 U. S. 233, 247, 8 Sup. Ct. 106, 31 L. Ed. 132—and especially on the strength of the decision in Beals v. Railroad Company, which is on all fours with the case in hand. In the latter case a bill was filed against the trustee in a deed of trust, to cancel the same; but the complainant Beals, who was a bondholder, was not made a party thereto. Nevertheless it was ruled that the bondholders were parties by representation, and that a decree canceling the mortgage was obligatory upon the bondholders, as well as upon their trustee."

In addition to the cases cited in the excerpt from the opinion of Judge Thayer, see Farmers' L. & T. Co. v. Kansas City, etc., Co. (C. C.) 53 Fed. 182–185; Heckman v. U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820.

It is strenuously insisted, however, on the part of appellants, that the action brought by Nathaniel W. Raphael was not one to foreclose the mortgage, but one to redeem from the foreclosure sales of 1881. While it is true that Nathaniel W. Raphael, in his prayer for relief, did ask to be permitted to redeem from those sales, that was not the main and chief object of his suit. The object of his suit was to have the mortgage of May 1, 1879, established as a lien upon the road, and it foreclosed. To do this, as before stated, it was necessary and essential that the sales of foreclosure in 1881 be declared invalid, or he permitted to redeem from that sale, which, if he was entitled to do, would have the effect of restoring the lien of the mortgage of 1879, and it could then be foreclosed. It is insisted that it could not be a foreclosure proceeding, because, under the statute law of Utah, a mortgagee could have but one remedy, either at law to recover the indebtedness secured by the mortgage, or foreclose the mortgage, and it is argued that, as in that case, Nathaniel W. Raphael sought to have the sales of 1881 declared void, or he permitted to redeem therefrom, and for an account of the rents and profits from the Rio Grande Railway Company, he was seeking a remedy inconsistent with the foreclosure of a mortgage, and hence it cannot be said to have been an action of foreclosure. But as we have before seen, it was essential, to enable him to obtain a foreclosure of that mortgage, to avoid the sale of 1881, either by showing its invalidity or by redeeming therefrom. Unless he could do one of these, the mortgage securing his bonds had no existence as a lien upon the railroad properties. This was the issue directly tried, and found against him, and the relief he sought, to wit, the foreclosure of that mortgage, denied.

The decree in that case, we think, possesses every element of res adjudicata, and the court below rightly sustained the plea, and its decree is affirmed.