## MERCANTILE TRUST CO. v. SCHLAFLY. *

(Circuit Court of Appeals, Eighth Circuit. March 28, 1924.)

No. 6423.

1. **Injunction ⬅118(4)—Bill held to state cause of action in equity.**

A bill by a trustee in bankruptcy to recover a fund belonging to the estate, which alleged that, unless enjoined, defendant would distribute the fund among a large number of bondholders, making necessary separate suits against each for its recovery, and praying for such injunction, *held* to state a cause of action within the equity jurisdiction.

2. **Parties ⬅33—Bondholders held not necessary parties to suit against mortgage trustee.**

Where the trustee in a mortgage securing bonds issued by a corporation was authorized to collect the interest on the bonds and the principal as the various series fell due, and to disburse it to the holders, it represented the bondholders in such sense that they were not necessary parties to a suit by the trustee in bankruptcy of the mortgagor to recover money so collected within four months prior to the bankruptcy and not yet disbursed.

3. **Bankruptcy ⬅164—Equitable lien cannot arise out of a preferential payment.**

Where a corporation, within four months prior to its bankruptcy, made payments to the trustee in a mortgage securing its bonds, which at the end of a six-months period were to be applied in payment of the interest on, and the principal of, some of the bonds, such payments were preferential under the Bankruptcy Act (Comp. St. §§ 9585–9656), and no equitable lien in favor of the bondholders could attach, which would avoid their preferential character.

4. **Bankruptcy ⬅164—Secured creditor not entitled to preferential payment from general assets.**

The fact that a creditor is secured, and that the security is equal in value to the debt, does not prevent a payment to him from general funds of bankrupt, not a part of his security, within four months prior to bankruptcy, from being preferential.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in equity by John F. Schlafly, trustee in bankruptcy of the Temtor Corn & Fruit Products Company, against the Mercantile Trust Company. Decree for complainant, and defendant appeals. Affirmed.

Samuel A. Mitchell and S. L. Swarts, both of St. Louis, Mo., for appellant.

Frank H. Sullivan, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, and Eugene H. Angert, all of St. Louis, Mo., on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is a bill by the trustee in bankruptcy of the Temtor Corn & Fruit Products Company against the Mercantile Trust Company to recover $67,250 as preferential payments made within four months of the filing of the petition in bankruptcy.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied June 10, 1924.

The basis of the equity in the bill is injunction and the avoidance of multiplicity of actions. The payments involved in the bill were two, namely, one of $45,000 and one of $22,500. At the trial, complainant dismissed as to the smaller payment. From a decree according recovery of the $45,000 payment, the Trust Company brings this appeal.

Temtor Company was owner of two glucose manufacturing plants and of notes for $1,000,000 executed by the Best-Clymer Manufacturing Company and secured by pledge of the shares of stock of that company. It executed a mortgage covering its property and a pledge of these notes and collateral of the Best-Clymer Company to secure a $1,500,000 issue of bonds. These bonds were in series of $75,000 each, coming due at succeeding six-month periods. The arrangement for payments of interest and principal of these bonds, as provided in the mortgage, was that the company should deposit with the trustee (defendant and appellant herein) each month one-sixth of the amount necessary to pay interest on the entire issue and to retire the bonds coming due at the next six-month period. Amounts so deposited were to be held by the trustee for the above purposes exclusively. The $45,000 here involved was an amount covering two of these monthly payments. It was paid less than two months before the petition in bankruptcy was filed and had not been paid over to the bondholders at the time this bill was filed.

[1] Appellant attacks the sufficiency of the bill herein on several grounds. The first is that it does not state a cause of action in equity. Paragraph 11 of the bill is as follows:

"Unless the defendant be restrained and enjoined from so doing, it will disburse said funds to and for the benefit of the holders of said bonds, and the complainant will be put to his various actions against each of them to recover the amount so received by each, and will thereby be subjected to a multiplicity of suits against persons whose identity is unknown, residing in widely separated localities."

The allegations quoted established the right of the court of equity to proceed herein to final adjudication.

[2] The second attack upon the bill is that it lacks necessary parties because the bondholders are not made parties. The rule as to binding representation of bondholders by the trustee under a mortgage is stated in the leading case of Kerrison v. Stewart, 93 U. S. 155, 160 (23 L. Ed. 843), as follows:

"It cannot be doubted, that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust (Shaw v. Norfolk Co. R. R. Co., 5 Gray, 171; Bifield v. Taylor, 1 Beat. 91; Campbell v. Railroad Co., 1 Woods, 376; Ashton v. Atlantic Bank, 3 Allen, 220); or to one by a stranger against him to defeat it in whole or in part (Rogers v. Rogers, 3 Paige, 379; Wakeman v. Grover, 4 Paige, 34; Winslow v. M. & P. R. R. Co., 4 Minn. 317; Campbell v. Watson, 8 Ohio, 500). In such cases, the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party.

"The principle which underlies this rule has always been applied in proceedings relating to railway mortgages, where a trustee holds the security for the benefit of bondholders. It is not, as seems to be supposed by the counsel for the appellants, a new principle developed by the necessities of that class of cases, but an old one, long in use under analogous circumstances, and found to be well adapted to the protection of the rights of those interested in such securities, without subjecting litigants to unnecessary inconvenience.

"Undoubtedly cases may arise in which it would be proper to have before the court the beneficiaries themselves, or some one other than the trustee to represent their interests. They then become proper parties, and may be brought in or not, as the court in the exercise of its judicial discretion may determine."

The rule thus announced has been adhered to repeatedly. Kent v. Canal Co., 144 U. S. 75, 90, 12 Sup. Ct. 650, 36 L. Ed. 352; Beals v. Railroad Co., 133 U. S. 290, 295, 10 Sup. Ct. 314, 33 L. Ed. 608; Vetterlein v. Barnes, 124 U. S. 169, 172, 8 Sup. Ct. 441, 31 L. Ed. 400; Richter v. Jerome, 123 U. S. 233, 246, 8 Sup. Ct. 106, 31 L. Ed. 132; Shaw v. Railroad, 100 U. S. 605, 611, 25 L. Ed. 757; Corcoran v. Canal Co., 94 U. S. 741, 745, 24 L. Ed. 190; Raphael v. Railroad Co., 201 Fed. 854, 858, 120 C. C. A. 184 (this court); Woods v. Woodson, 100 Fed. 515, 519, 40 C. C. A. 525 (this court); Atlantic Trust Co. v. Chapman, 145 Fed. 820, 823, 76 C. C. A. 396 (9th C. C. A.); National Salt Co. v. Ingraham, 143 Fed. 805, 809, 74 C. C. A. 479 (2d C. C. A.); Talley v. Curtain, 54 Fed. 43, 48, 4 C. C. A. 177 (4th C. C. A.); Farmers' L. & T. Co. v. Railroad Co. (C. C.) 53 Fed. 182, 185 (Kan., opinion by Judge Caldwell). With the above rule in view, an examination of the deed of trust reveals the following: That it covers an issue of 1,500 bonds ($1,000 each) of various series which would naturally be distributed in the hands of many holders; that the powers granted the trustee to represent and care for the interests of the bondholders are broad; that among such powers are caring for taxes, insurance, financial statements and various other matters bearing on protection of the security for the bonds; that one purpose of the trust is " * * * for the enforcement of the payment of said bonds and of the interest thereon when payable in accordance with the provisions of said bonds and interest obligations and of this indenture, and the performance of and full compliance with the covenants, terms and conditions of this indenture"; that payments on the bonds are to be made to the trustee; that, in respect to the character of payments here involved, the trustee is to receive and pay them over to the bondholders, may waive such payment and may enforce payment, in case of default. These granted powers are certainly sufficient to authorize the trustee to defend any action having as its object the taking from it of money thus paid to it. Having such authority, it may fully represent the bondholders and the results of such litigation are binding on them. There is no suggestion here that the trustee is not proceeding with the utmost good faith and vigor. The application of the above-quoted legal rule to these facts requires the determination that the bondholders are not necessary parties in this action.

The third objection to the bill is closely related to the one just discussed. It is that an action to reach a preferential transfer is transi-

tory and can only be asserted where the creditor can be found. Without determining whether the principle of law thus stated is or is not correct, if we are right that the bondholders are not necessary parties, then it must follow that this bill, brought where the trustee resides, conforms to the above rule asserted by appellant.

[3] The fourth attack upon the sufficiency of the bill is that when these payments were made to the trustee under the terms of the mortgage, there attached thereto an equitable lien in favor of the bondholders for whose benefit such payments had been made. We need not discuss whether, under some circumstances, or even ordinarily, the contention just stated is true. The circumstances here and the nature of the claim made by the complainant prevents the application of it. An equitable lien could not arise out of a preferential payment with such force as to defeat that very preference and to that extent annul the statutory prohibition against preferences attaching to the property of bankrupts.

[4] Another attack upon the bill is that it seeks an injunction but fails to allege that the security for the bonds on the date of the preferential payment had a value less than the debt. The logical result of such claim is sufficient to show its fallacy. It would result in a secured creditor being able to take from the general fund (not a part of his security) money and other liquid assets, lawfully apply them to his debt and still retain his full security to the prejudice of the unsecured creditors if, as here, the security proved inadequate when realized upon. Such a result would be, in fact, an unlawful preference to the amount of the money or assets thus diverted from general distribution.

Appellant challenges the determination of the trial court that the bankrupt was insolvent at the time of payment. Its claim is that while the bankrupt was in need of ready money, yet the property of the debtor at that time was worth more than its indebtedness. The evidence as to the general condition of the bankrupt at the time of this payment seems to show, almost conclusively, that the bankrupt was insolvent. For more than four months before this payment, the affairs of the bankrupt were so involved that the management of its business had been taken over by a committee of its creditors. The same condition was present in the affairs of the Best-Clymer Company, $1,000,000 of the notes of which were a portion of the assets of this bankrupt. The condition of the glucose business; the inadaptability of these plants to other usage; the limited market for such plants; the low price received within a few months thereafter upon sale of these plants to appellant and upon resale by it to others, are additional circumstances favoring the finding of the court upon a disputed question of fact.

Appellant contends that this payment of $45,000 did not have the effect of creating a preference. The evidence clearly shows that it was a preference. At the trial, it was shown that $1,000,000 had been realized by the bondholders from the sale of the property of the Temtor business which was covered by this mortgage and that they would realize $400,000 from the Best-Clymer estate, which was also in bank-

ruptcy. These amounts, which seem to be all that can be realized by the bondholders from their security, fall short of the sum due them by $100,000 and accrued interest on the entire bond issue. As the entire security has thus proven inadequate to cover the bonded indebtedness by more than the $45,000 paid, that amount is a preference. As this payment was made when the bankrupt was insolvent and within the four-month period, it was such a preference as forbidden by the act.

The next contention of appellant is that the evidence establishes that appellant had no reasonable cause, at the time this payment was made, to believe the bankrupt insolvent or that the payment would effect a preference. The testimony on this point is in dispute but the trial court is sustained by the decided weight of the evidence. A very strong piece of evidence in this regard is a letter by the president of appellant to a number of creditors of the bankrupt. After suggesting certain sacrifices to the several classes of creditors he writes:

"I am quite sure unless the plan I have outlined above, or some one can outline something better, that we will not only lose 22 per cent. (which is only 22 per cent. of 60 per cent. of the original notes) on our bank loans, but I doubt very much whether we will realize better than 50 per cent., and I urgently recommend that if Meyer's report is satisfactory, the bank committee (of which I am not a member) should adopt the plan above outlined.

"The meeting held yesterday was attended by the Best-Clymer preferred stockholders, a committee of the Temtor stockholders, the bank committee and Mr. A. C. F. Meyer and myself representing half of the bondholders, and all seemed alive to the situation that unless we took immediate action along such lines as I have suggested above that disaster would follow."

At any rate, the evidence is so sharply conflicting that there is no reason to substitute the judgment of this court for that of the chancellor who tried the case.

The decree is affirmed.